UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REPUBLICAN NATIONAL COMMITTEE,
310 First Street, SE
Washington, D.C. 20003,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF STATE,
320 21st Street, NW
Washington, D.C. 20451

    Defendants.

Civil Action No. _____

## **COMPLAINT**

    This November, the people of the United States will decide who will serve as their next President—and they should do so with access to as much information as possible about all of the candidates' fitness for this nation's highest office. To that end, the Republican National Committee (RNC) files this suit under the Freedom of Information Act (FOIA) seeking records relating to former Secretary of State, and leading candidate to become the Democratic Party's presidential nominee, Hillary Clinton's tenure at the U.S. Department of State.

    Last December, the RNC requested records under FOIA relating to Secretary Clinton and State Department staffers that may reflect blurred lines between the State Department and Clinton's private organizations. In particular, the RNC requested visitor logs to Secretary Clinton's office and formal quarters, invitations and guest lists for functions in the State Department Diplomatic Reception Rooms, donation solicitations and receipts related to maintenance and improvement of the State Department's Diplomatic Reception Rooms, and records related to mandatory ethics training by Secretary Clinton and her staff. More than three months later, the State Department has not made a determination about those requests (as FOIA requires), let alone

provided any responsive records. With the presidential election fast approaching, the delay must end.

The very purpose of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold governors" like Secretary Clinton "accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1976). Yet the State Department threatens to deprive the American public of critical information needed to make an informed vote in 2016. That cannot happen. This Court should require the State Department to meet its statutory disclosure obligations—and to do so with haste.

## PARTIES

1. The Republican National Committee (the Plaintiff) is an unincorporated political committee with headquarters in Washington, D.C.

2. The United States Department of State (the Defendant) is an agency within the meaning of 5 U.S.C. §552(f)(1) that has possession, custody, and control of records that the RNC seeks under FOIA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4. Venue is proper in this Court under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B) because the State Department, an agency of the United States Government, is headquartered and resides in this District.

5. The RNC is deemed to have exhausted all its administrative remedies under 5 U.S.C. § 552(a)(6)(C) because the State Department has failed to make a determination and provide notification of that determination within the statutorily mandated time limit of twenty working days after receiving the requests. 5 U.S.C. § 552(a)(6)(A)(i).

## BACKGROUND

6. FOIA "focuses on the citizens' right to be informed about what their government is up to" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*,

489 U.S. 749, 773 (1989). "[D]isclosure, not secrecy, is the dominant objective." *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). Indeed, one of President Obama's first acts as President was to state his administration's approach to FOIA, instructing agency heads that "the Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails . . . . Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." Presidential Memorandum, Freedom of Information Act, 74 Fed. Reg. 4,681, 4,683 (Jan. 21, 2009).

7.  Former Secretary Clinton is seeking, and is considered the leading candidate to secure, the Democratic Party's presidential nomination. Clinton's actions while Secretary of State—and the actions of those senior staffers with whom she worked most closely and supervised—are manifestly relevant to whether she is fit to lead this country. Public scrutiny of her tenure at the State Department is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) ("Democracies die behind closed doors.").

8.  That scrutiny must happen before the American people cast their ballots. As a general matter, "[s]tale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). In an election year, stale information is of no value at all. That is reason all the more for this Court to order expedited disclosures to the RNC's FOIA requests.

## THE RNC'S REQUESTS

9.  On December 4, 2015, the RNC made four separate FOIA requests for information relating to Clinton's tenure at the State Department. Those requests seek records concerning Clinton and other State Department staffers with close ties to Clinton. The State Department staffers mentioned in the RNC's FOIA requests include Cheryl Mills, Jacob Sullivan, Caitlin Klevorick, Raymond Maxwell, Patrick Kennedy, Philippe Reines, Huma Abedin, Anne-Marie Slaughter, Dennis Cheng, Andrew Shapiro, Kris M. Balderston, and Bryan Pagliano.

10.     Cheryl Mills is a longtime Clinton aide who served as Secretary Clinton's Chief of Staff at the State Department.

11.     Jacob Sullivan, former Director of Policy Planning and Deputy Chief of Staff at the State Department, handled some of the most pressing policies and international crises during Secretary Clinton's tenure at the State Department. *See* Steven Lee Myers, *Unclassified Emails May Have Consequences for a Key Deputy*, N.Y. Times, Feb. 27, 2016, at A13. Sullivan has been regarded as the "principal conduit" to Secretary Clinton. *Id.*

12.     Caitlin Klevorick, Senior Advisor to Secretary Clinton, was one of a select handful of employees to receive the "special government employee" designation. That designation allowed Klevorick to run a private consulting firm (CBK Strategies) that advised government and corporate clients about "policy and political advising" while at the same time accessing sensitive government information through her role at the State Department. Justin Elliott & Liz Day, *State Department Finally Releases List of "Special Government Employees*,*"* ProPublica (Jan. 30, 2014).

13.     Raymond Maxwell was the Deputy Assistant Secretary in the Bureau of Near Eastern Affairs.

14.     Philippe Reines began as Senior Advisor to Secretary Clinton but was later promoted to Deputy Assistant Secretary of State. Reines has been referred to by some as "Clinton's principal gatekeeper." Amy Chozick, *Madam Secretary of the Universe*, N.Y. Times Magazine, Jan. 26, 2014, at MM26.

15.     Patrick Kennedy is the State Department's Under Secretary for Management, a role that he also held during Clinton's tenure as Secretary of State.

16.     Huma Abedin, regarded by many as Secretary Clinton's closest confidant, served as Deputy Chief of Staff during Clinton's entire tenure at the State Department. William D. Cohan, *Is Huma Abedin Hillary Clinton's Secret Weapon or Her Next Big Problem?*, Vanity Fair, Feb. 2016. While working at the State Department, Abedin also held jobs with as many as four different employers (including the Clinton Foundation), raising questions about potential conflicts of

interest and misuse of government secrets. Rosalind S. Helderman & Tom Hamburger, *How Huma Abedin Operated at the Center of the Clinton Universe*, Washington Post (Aug. 27, 2015).

17. Anne-Marie Slaughter served as the Director of Policy Planning under Secretary Clinton between January 2009 and February 2011.

18. Dennis Cheng served as a top fundraiser for Secretary Clinton's 2008 presidential campaign before becoming Deputy Chief of Protocol under Clinton at the State Department. Typifying the revolving door between Secretary Clinton's government affairs and the Clinton family's private endeavors, in 2011 Cheng left his role with the State Department to become the Chief of Development for the Clinton Foundation—a move that raised questions about his contact with the agency before and after his tenure. Rosalind S. Helderman et al., *Clintons' Foundation has Raised Nearly $2 Billion — and Some Key Questions*, Washington Post (Feb. 18, 2015).

19. Andrew Shapiro served as Senior Advisor to Secretary Clinton at the State Department before assuming the role of Assistant Secretary of State for Political-Military Affairs. In the latter role, Shapiro brokered some of those most notorious State Department transactions with foreign nations, including the $29 billion arms sale to Saudi Arabia. Mark Landler & Steven L. Myers, *With $30 Billion Arms Deal, U.S. Bolsters Saudi Ties*, N.Y. Times, Dec. 30, 2011, at A10.

20. Kris Balderston managed the State Department's Global Partnership Initiative during Clinton's term as Secretary of State. While serving in that role, Balderston actively recruited partnerships with high-dollar Clinton Foundation contributors, raising questions about potential conflicts of interest. Stephen Dinan & S.A. Miller, *Emails Show Clinton Foundation Shaped Policy*, Washington Times (Sept. 1, 2015); Maggie Haberman, *Emails Show Hillary Clinton Adviser Sidestepping Potential Conflict*, N.Y. Times Blog (Sept. 28, 2015).

21. Bryan Pagliano served as the technology director for Secretary Clinton's 2008 presidential campaign before joining Clinton's staff at the State Department. Secretary Clinton reportedly paid Pagliano out of her own pocket to set up and maintain the now-infamous private server in her Chappaqua, New York home. Rosalind S. Helderman & Carol D. Leonnig, *Clinton's*

*Personally Paid State Department Staffer to Maintain Server*, Washington Post (Sept. 5, 2015). Pagliano, who did not disclose his off-the-book earnings to the State Department, invoked the Fifth Amendment when summoned to testify about Secretary Clinton's private server. Carol D. Leonnig, *Lawmakers Require Ex-Clinton Staffer Who Worked on E-mail Server to Appear*, Washington Post (Sept. 9, 2015). He was recently granted immunity for his cooperation in the criminal investigation. Adam Goldman, *Justice Dept. Grants Immunity to Staffer who set up Clinton Email Server*, Washington Post (Mar. 2, 2016).

22. Through its first request, the RNC sought "[a]ny and all visitor logs or other records detailing any visitors to the Secretary of State's formal quarters and/or personal office located in the Harry S. Truman building." The timeframe for that request is from January 21, 2009 to February 1, 2013. A true and correct copy of the RNC's first request is attached as Exhibit 1.

23. Through its second request, the RNC asked for "[a]ny and all records relating to applications for, as well as approvals of, invitations to any function at a U.S. Department of State Diplomatic Reception Room," as well as "any and all guest lists for functions held at a U.S. Department of State Diplomatic Reception Room. The time period covered by that request is January 21, 2009 to February 1, 2013. A true and correct copy of the RNC's second request is attached as Exhibit 2.

24. Through its third request, the RNC requested "[a]ny and all records relating to the solicitation and/or receipt of donations through the 'Patrons of Diplomacy' program to maintain, renovate, or otherwise fund the U.S. Department of State Diplomatic Reception Rooms" The time period for that request is January 21, 2009 to February 1, 2013. A true and correct copy of the RNC's third request is attached as Exhibit 3.

25. And finally, through its fourth request, the RNC sought records concerning Hillary Clinton and her senior staffers' "attendance at, completion of, or waiver of the requirement to complete, the online ethics training that all new U.S. Department of State employees must complete and the yearly training in ethics that all U.S. Department of State employees who file a SF-278 or OGE-450 financial disclosure form are required to complete." The time period for this

request is from January 1, 2009 to December 31, 2013. A true and correct copy of the RNC's fourth request is attached as Exhibit 4.

26. On January 27, 2016, the State Department sent separate letters acknowledging that it had received the RNC's four FOIA requests and assigning Case Control Numbers F-2015-17194, F-2015-17196, F-2015-17200, and F-2015-17202. And then, silence. The State Department never disclosed any of the requested materials or explained why it cannot comply with its statutory obligations. *See Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) ("We have often noted 'the Act's goal of broad disclosure' and insisted that the exemptions be 'given a narrow compass.'"). True and correct copies of the State Department's acknowledgement letters are compiled in Exhibit 5.

27. Because the State Department failed to communicate its "determination" on the RNC's FOIA requests within twenty working days (5 U.S.C. § 552(a)(6)(A)), the RNC has constructively exhausted its administrative remedies and may proceed directly to this Court. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (a requestor exhausts its remedies unless, within the relevant time period, the agency "inform[s] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions"); *id.* at 189-90 ("[I]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.").

28. Time is of the essence. The information that the RNC seeks bears on Secretary Clinton's fitness to serve as the next President of the United States and will have no value unless it makes its way into the public's hands before the election. The RNC and the public will suffer irreparable harm if the requested information does not come to light before then.

29. The State Department's burden to produce the requested documents is minimal when compared to the American people's substantial interest in vetting a presidential nominee. Indeed, the burden on the State Department is minimal even if considered alone: The agency has

fielded FOIA requests relating to Secretary Clinton's State Department tenure for the last year, so it should already be in a position to disclose many of the communications the RNC seeks.

30. Finally, no "exceptional circumstances" exist that would justify giving the State Department additional time to respond to the RNC's FOIA requests. 5 U.S.C. § 552(a)(6)(C)(ii). If anything, with the election looming, there is every reason to order the State Department to comply with the RNC's FOIA requests at double speed.

## COUNT I: VIOLATION OF FOIA, 5 U.S.C. § 552

31. The State Department is unlawfully withholding records that the RNC requested under 5 U.S.C. § 552.

32. The State Department's failure to disclose the requested records has irreparably injured the RNC and will continue to do so until the State Department discloses the records.

## PRAYER FOR RELIEF

The RNC requests the following:

1. Expedited consideration under 28 U.S.C. § 1657;

2. A declaratory judgment that the State Department has improperly withheld the requested records under FOIA;

3. An order directing the State Department to respond and produce the requested documents by July 1, 2016, in time for the Democratic National Convention;

4. Costs and reasonable attorneys' fees under 5 U.S.C. § 552(a)(4)(E);

5. Any other relief that the Court deems appropriate.

Dated March 14, 2016.

*/s/ Kelley Barnaby*

Kelley Barnaby (D.C. Bar. No. 998757)
kelley.barnaby@alston.com
Edward T. Kang (D.C. Bar No. 1011251)
(*application for admission pending*)
edward.kang@alston.com
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Telephone: (202) 239-3300

Brian D. Boone (D.C. Bar No. 987633)
(*application for admission pending*)
brian.boone@alston.com
D. Andrew Hatchett
(*application for admission pending*)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street
Charlotte, NC 28280
Telephone: (704) 444-1000

John R. Phillippe
jphillippe@gop.com
REPUBLICAN NATIONAL COMMITTEE
310 First Street, SE
Washington, DC 20003
Telephone: (202) 863-8638

*Counsel for Plaintiff Republican National Committee*